UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK) SE,

        Plaintiff,

vs.                                                                                  CASE NO. 16-CV-09848-PGG

PETER HERZIG,

        Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE
TO AMEND COUNTERCLAIMS AND FOR A JURY TRIAL**

Steven E. Goldman
GOLDMAN & HELLMAN
*Attorneys for Plaintiff, Counter Defendant,
Great Lakes Reinsuranc(UK) SE*
233 Harvard Street
Suite 211
Brookline, MA 02446
Tel: (617) 566-4200
Fax: (617) 566-4292
E: steven@goldmanandhellman.com

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                    **Pages**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012).................................................................................................8

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
    No. 06 CIV. 3123 (CSH), 2008 WL 2980919, (S.D.N.Y. Aug. 1, 2008)................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)..........................................................9

*Beacon Theatres, Inc. v. Westover*,
    359 U.S. 500 (1959)..............................................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)............................................................8

*D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    59 Misc. 3d 714, 74 N.Y.S.3d 469 (N.Y. Sup. Ct. 2018).................................................9, 10, 11

*Fed. Ins. Co. v. PGG Realty, LLC*,
    No. 06 CIV. 2455 (JSR), 2007 WL 1149245, (S.D.N.Y. Apr. 17, 2007), *aff'd sub nom. Fed. Ins. Co. v. Keybank Nat. Ass'n*, 340 F. App'x 5 (2d Cir. 2009) ................................................13, 16

*Markel Am. Ins. Co. v. Linhart*,
    No. 11-C-5094 SJF GRB, 2012 WL 2930207 (E.D.N.Y. July 11, 2012) .......................12,15,16

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)...................................................................................................8

*Royal v. Deep Sea* 2004 WL 3670966,
    2005 A.M.C. 640 (S.D.N.Y. 2005).......................................................................................15

*Sphere Drake Ins. PLC v. J Shree Corp.*,
    184 F.R.D. 258 (S.D.N.Y. 1999) .........................................................................................14

*St. Paul Fire and Marine Insurance Co. v. Holiday Fair, Inc.*,
   1996 WL 148350 (S.D.N.Y. Apr. 2, 1996)..................................................................13, 14

*Wiesshaus v. Port Auth. of New York & New Jersey*,
   No. 11 CIV. 06616 (RKE), 2018 WL 6619736 (S.D.N.Y. Dec. 18, 2018)...............................8

*Wilmington Trust v. United States District Court for the District of Hawaii*,
   934 F.2d 1026 (9th Cir.1991), *cert. denied*, 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220
   (1992)..........................................................................................................................14

*Norwalk Cove Marina, Inc. v. S/V ODYSSEUS*,
   100 F. Supp. 2d 113 (D. Conn. 2000)..............................................................................16

**Other Authorities**

Federal Rules of Civil Procedure Rule 9(h)......................................................................12, 13

Federal Rules of Civil Procedure Rule 12(b)(6)...................................................................8

Federal Rules of Civil Procedure Rule 15(a)(2)...................................................................8

Federal Rules of Civil Procedure Rule 38(e)......................................................................13

## STATEMENT OF FACTS

As Defendant's counsel correctly states, this is indeed a straight-forward insurance coverage dispute which has degenerated into a contest of wills and resources due to the Defendant's threats and baseless assertions regarding the actions of the Plaintiff marine insurance company. Originally filed because Mr. Herzig was wrongfully demanding that Plaintiff agree to indemnify him for damages to his insured vessel far in excess of the reasonable cost of the repairs made necessary by an incident which occurred on or about October 7, 2016, the undersigned counsel filed a one (1) count Complaint for Declaratory Judgment, with federal admiralty jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure and 28 USC sec. 1333. No other basis for federal jurisdiction has ever been asserted or presented.

Coverage for the Defendant's claim arising out of the incident of October 7, 2016 was never in question, only the amount required in order to complete the repairs attributable to the incident. From the moment that his claim was first questioned, Mr. Herzig was at all times represented by astute legal counsel (in fact the exact same astute legal counsel who had represented the Defendant in a prior claim against another marine insurance company which resulted in a payment to Defendant of $600,000.00). From the moment that the claim arose, just days after October 7, 2016, Mr. Herzig was represented by Roy Shorter, the renowned and "accredited marine surveyor and... designated expert" whose advice and instructions were provided to the Defendant. With the advice, assistance and careful attentions afforded by his referenced experts, Mr. Herzig agreed to accept the sum of $175,000.00 in full and final settlement of his claim for the damage sustained by his vessel, executing a Policyholder's

1

Release dated December 29, 2016 and accepting the check that was tendered to his attorney in Boca Raton, Florida.

By his own admission, it was within a matter of just a few days that Mr. Herzig was seized with what might be termed a serious case of "settler's remorse," and by as early as January 10, 2017 (and perhaps earlier!) he was instructing his retail brokers at Crystal & Company to contact Plaintiff's parent company, Munich Re, in order to demand that Great Lakes Re reopen the claim and agree to pay vastly inflated repair costs approaching the full policy limits of $600,000.00. (*See*, depo. of Herzig, p. 173). *Within a matter of days*!

Per his testimony in his deposition, Mr. Herzig was instructing his retail brokers at Crystal & Company throughout the month of January 2017 to contact Munich Re demanding that the parent company instruct Great Lakes Re to reopen the settled claim (*See*, depo. of Herzig, p. 189), with threats of legal action to be taken in the event his demands were unsatisfied. (*See*, depo. of Herzig, p. 188).

Not at all impressed with his risible threats of legal action, Plaintiff nonetheless agreed, in a show of good faith, to once again review the situation and to reconsider Mr. Herzig's stated position, by having the vessel inspected yet again by Michael Grant, the original marine surveyor who had been appointed for that task back in late 2016, together with Peter Gimpel, a South Florida-based naval architect of outstanding reputation. In fact, the naval architect that Plaintiff assigned for the second inspection/survey of the vessel was so well thought of by the Defendant and his entourage that Herzig and Mr. Shorter had retained Mr. Gimpel's services in connection with the Defendant's prior claim for an incident in 2015 (which was against AIG and in which

2

Herzig came away with the full $600,000.00 limits by making the exact same type of threats and noises which are in the record in the instant matter). However, it is noteworthy that Mr. Gimpel declined to accept employment with Herzig regarding the instant matter because of what the record illustrates are well-premised concerns with the honesty of both the Defendant and his surveyor, Mr. Shorter.

On a second inspection/survey of the vessel in February 2017, both the original surveyor, Mr. Grant, and the newly appointed naval architect, Mr. Gimpel, reached the exact same conclusion, that repairs for the damage sustained by the Defendant's vessel attributable to the incident of October 7, 2016, and therefore covered under Plaintiff's policy, could be no more than, and almost certainly a great deal less than, the figure of $175,000.00 which Herzig had willingly accepted as a resolution of his claim and as a settlement of the litigation. Confronted with the Defendant's persistent refusal to concede the facts, and with Herzig continuing both via his brokers and via his own direct communications to make outrageous allegations of bad faith and "coercive" actions by Great Lakes Re, the said Plaintiff amended the still pending Complaint in order to include a cause of action asserting that the entire matter had been the subject of a binding and valid settlement.

As counsel for the Defendant notes, Herzig was the owner of a 1998 62 ft. Sunseeker vessel which, via the efforts of a retail broker and a surplus lines broker, both acting as his agents, he had managed to insure for $600,000.00, a figure which Plaintiff learned in the course of the post-claim investigation was substantially greater than any reasonable calculation of its fair market value. As counsel notes, when this critical fact was brought to the attention of the

Plaintiff's Underwriters during the course of the investigation into the fact and circumstances pertaining to the incident of October 7, 2016, Plaintiff took the opportunity to unilateraly reduce the agreed value of the almost 20 year old vessel down from $600,000.00 to the fair market value that Plaintiff's field surveyors were urging. However, notwithstanding counsel's persistent and misleading assertions regarding this action taken by Plaintiff, this action had absolutely no impact upon the claim! Rather, the reduction in the agreed value could only impact some subsequent claim which might have arisen under the policy, which remained in full force and effect. That was the only reason and the only conceivable impact of the reduction in the agreed value of the vessel. There was absolutely no impact upon the claim which is before this Court.

At his deposition, the Plaintiff's FRCP 30(b)(6) witness, Mr. B.A. Usher, who is the Senior Underwriter and Managing Director at Concept Special Risks, Ltd., which acts as the Plaintiff's authorized Underwriting Agent, was asked about this reduction in the value of the policy which occurred after submission of the claim, and which counsel for Mr. Herzig would have this Court believe might support a claim for punitive damages:

> Q: So how is it, then, that you were able to reduce coverage without consulting the insured?
>
> A: Because I determined that the valuation had been overstated by courtesy of the comments made by Wager. So, as a consequence, I can change the value of the vessel but only by endorsement. What I can't do is leave the value as the initial. Because we only do agreed value, I'm now varying the agreement upon which, and returning the appropriate premium. I can do that. But if I had an actual cash value policy, I wouldn't need to do that because the determination of the value would be whatever the market value was at the time of the incident. *That's why I also insured that the change in the market value was post-incident. It was after the date of the loss, therefore it would not affect any amount recoverable under*

4

> *the loss because the reduction in value did not take place until November 18, 2016, well after the incident had taken place.*

(Depo. of Usher, p. 110-111).

To re-emphasize, what Mr. Usher stated in his deposition was that the reduction in value post-incident was done with full recognition that such action could have absolutely no impact upon the value of the pending claim, and no impact upon the amount for which the Defendant's claim would be resolved. Defendant's counsel is fully aware of this fact, and yet he nonetheless has continued to assert to this Court that this reduction in the agreed value of the vessel's hull can or should have some impact on this litigation. There is not one iota of evidence or testimony in this entire record which would lend support to counsel's persistent contention that the reduction in the agreed value of the vessel played any role in the resolution of the claim.

Additionally, Defendant's counsel is (or should be) also fully aware of the fact that he is misleading this Court when he asserts that his client was "unaware" of the Plaintiff's issuance of the endorsement reducing the value of the vessel, and that the premium was not refunded. In an email from his retail broker at Crystal & Company dated January 3, 2017, a copy of which is (attached hereto as Exhibit "A"), the latter attached the referenced endorsement and stated that he had "not yet received the funds from the wholesaler (broker). Once the funds are received to our accounting department, we will remit the refund back to you accordingly."

The endorsement which Defendant is arguing about was in fact issued by Plaintiff, but not directly to the Plaintiff, quite naturally. As in all matters involving marine insurance in the UK or London Market, documents are issued to the surplus lines or Lloyd's broker with which the marine insurance company deals directly. In this case, that broker was Quaker Special Risks,

5

Ltd., and the email referenced above was sent to the Herzig's retail broker in the normal course of business. It is an outrage for counsel to try to argue to this Court that this could support another cause of action for damages, of any kind or of any description.

Attached hereto as Exhibit "B" is a true and correct copy of an email dated January 3, 2017 from Defendant's surplus lines broker, Quaker Special Risks, to his retail broker, Crystal & Co, attaching the endorsement reducing the value of the vessel. The endorsement is dated November 18, 2016.

Attached hereto as Exhibit "C" is a true and correct copy of an email also dated January 3, 2017 from the surplus lines broker to the retail broker, stating that "this [November 18, 2016] is when the endorsement was first received and sent to you."

Exhibit "C" further states:

> This is an agency billed account so the attached credit endorsement is available on your statement and we can issue a check back to your office at any time. These funds are credited based on the original premium payment and so no funds would be coming back to us from the carrier.

Attached hereto as Exhibit "D" is a true and correct copy of the Credit Memo issued on November 18, 2016 by Quaker Special Risks, identifying Crystal & Company and their "Producer," and Peter Herzig as the Insured. Note the explicit reference to payment of the NYS Surplus Lines Tax, and the refund due to Herzig in the amount of $1,832.46.

Counsel for the Defendant is well aware of these documents, having deposed the representative of his client's surplus lines broker and having had the opportunity to obtain and review that broker's entire file. It is an outrage for counsel to now assert to this Court that he

6

should be permitted to amend his Counterclaim, merely asserting superfluous and redundant claims that are already before this Court.

## ARGUMENT

Defendant's Motion for Leave to Amend Counterclaims and for a Jury Trial should be denied because it is without basis in law or fact. The proposed new counterclaim that Great Lakes Re breached the implied covenant of good faith and fair dealing is facially insufficient, duplicative, and therefore futile. Herzig offers no plausible allegations that Great Lakes Re acted in bad faith in handling his claim. As to his demand for a jury trial, the weight of authority in the Second Circuit holds that a defendant in admiralty has no such right. To recognize such a right would deprive a plaintiff in admiralty, in this case, Great Lakes Re, from exercising is long standing and established right to elect to proceed without a jury. For these reasons, the Defendant's Motion should be denied.

1. **Legal Standard on a Motion to Amend**

Federal Rule of Civil Procedure 15(a) declares that leave to amend shall be given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Leave to amend should be denied if the court concludes that "amendment would be futile." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012). The adequacy of the proposed amended complaint is judged by the same standard as that applied to a motion to dismiss for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). *Wiesshaus v. Port Auth. of New York & New Jersey*, No. 11 CIV. 06616 (RKE), 2018 WL 6619736, at *4

(S.D.N.Y. Dec. 18, 2018). As such, the allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The claim must contain sufficient facts showing that the pleader is entitled to relief, and that the complainant's right to relief is not merely speculative. *Id.* at 555. But, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### a. Defendant Has Failed to Show that Great Lakes Re Acted in Bad Faith in Handling His Claim

Defendant's allegations of "bad faith" by Great Lakes Re are either insufficient or duplicative of his breach of contract claim under New York law, and as such, amending his counterclaim to include an independent cause of action for breach of the implied covenant of good faith and fair dealing would be futile.

Per the case cited by the Defendant as being allegedly "similar" to the present matter, the proposed claim for bad faith must be "fundamentally different from the [breach of contract claim]," in that the Defendant must show that the Great Lakes Re "refus[ed] to effectuate a prompt, fair, and equitable settlement of [the] claim." *Defendant's Memorandum*, at 10 (citing *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 59 Misc. 3d 714, 719, 74 N.Y.S.3d 469, 472 (N.Y. Sup. Ct. 2018)). However, it is obvious that the bulk of Defendant's theory of Great Lakes Re's alleged "bad faith" rests on the parties differing conclusions as to the "reasonable cost of repairs," which is also the basis for his counterclaim for breach of contract.

The Defendant claims that "Great Lakes' actions were not conducive to a fair and equitable resolution" of the claim, but this is merely a legal conclusion and must be disregarded. The Defendant then states that "Herzig offered to resolve his claim in the form of a single, upfront payment of $300,000," only to be "blindsided" by the litigation and a demand that he accept $175,000. *See Defendant's Memorandum*, at 10-11. The Defendant alleges that the figure of $175,000 is "based on [Great Lakes Re's] inadequate survey of the Vessel." *Defendant's Memorandum*, at 11. The Defendant does not posit what he believes to a more accurate figure, but the report by the Defendant's expert, Roy Shorter, of February 7, 2017, refers to a "quote" of $475,000 (*see* Exhibit F to *Defendant's Memorandum*, p. 3); this substantially higher "quote" is neither attached to Defendant's Memorandum, nor is it alleged to be somehow more "adequate" than the survey performed by the insurance adjuster. The Defendant goes on to say that Great Lakes Re "'ignored' the Scanlan survey," implying that the Scanlan survey offers a different estimate of the reasonable cost of repairs. *See Defendant's Memorandum*, at 11. But, the Scanlan survey was performed pre-loss, which the Defendant admits. *See Defendant's Memorandum*, at 3. Even if Defendant were to offer a competing survey, it would only go to the parties' dispute concerning the amount of reasonable cost of repairs, and would therefore be merely duplicative of the breach of contract claim already alleged by the Defendant.

The Defendant's only other allegation of conduct allegedly demonstrative of Great Lakes Re's "bad faith" is that Great Lakes Re "unilaterally slashed his coverage in half," without clarifying that this change did not and could not affect the handling of the claim, as explained above. *See Defendant's Memorandum*, at 11.

9

The case cited by Defendant, *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 59 Misc. 3d 714, 721, 74 N.Y.S.3d 469 (N.Y. Sup. Ct. 2018), is not analogous to the present matter and does not support his proposed claim of bad faith. *See Defendant's Memorandum*, at 10-12. In the first place, it is a New York state case and is therefore not controlling. More importantly, the facts of the two cases are not at all similar: in that case, the insured filed as the plaintiff only after the insurer failed to make a coverage decision for two years. *Id.*, at 472. Herzig has not alleged that Great Lakes Re delayed the investigation into his claim or put off making a determination. In *D.K. Property*, the insured sought "to be made whole for all of the legal and engineering fees and other costs that it ha[d] allegedly incurred." *Id.* Herzig has not alleged what "fees and other costs" he has incurred, and so presumably he is only seeking recovery of legal fees associated with him being, as he puts it, "forced" to assert counterclaims in this action. *See Defendant's Memorandum*, at 11-12. But, *D.K. Property* states "it has long been held that an insured may not recover the legal fees it incurs in bringing an action to settle its rights in an insurance policy." *Id.*, at 474 (citing cases). There is "a narrow exception" to this rule when "the insured can prove that the carrier had no arguable basis to challenge its claim and can further show that no reasonable carrier would, under the given facts, challenge the claim." *Id.* The court in *D.K. Property* recognized that the facts alleged by the insured in that case showed that the insurer lacked an "arguable basis" to deny the claim, particularly in light of the fact that one of the insurer's own engineers agreed with the insured's conclusion as to the cause of the damage. *Id.* The Defendant has not alleged a similar conflict within Great Lakes Re regarding their assessment of the claim. The Defendant has not and cannot assert that Great Lakes Re had

no arguable basis to challenge his claim. As such, the Defendant's claim for breach of the implied covenant of good faith and fair dealing, even if it were not wholly duplicative of his claim for breach of contract, is insufficient in that he has failed to allege any bad faith by Great Lakes Re in its handling of the claim.

The case of *Markel Am. Ins. Co. v. Linhart*, No. 11-C-5094 SJF GRB, 2012 WL 2930207 (E.D.N.Y. July 11, 2012) is instructive. In that case, the plaintiff insurer, Markel American Insurance Company, commenced an action against its insured, Matthew Linhart, seeking a declaratory judgment that certain damage to defendant's yacht was not covered by the marine insurance policy at issue. *Id.* at *1. The defendant insured filed an answer with several counterclaims, including bad faith and "wrongful conduct and handling of [his] claim." *Id.*, at *2. As in the present matter, the defendant's allegations of bad faith were "completely conclusory and are not plausible." *Id.* The court granted the insurer's motion to dismiss the bad faith claim, stating that the insurer "denied his claim only after conducting an investigation." *Id.* There were no allegations to support the insured's assertion that the insurer's action were "wrongful" or demonstrative of "bad faith," aside from a single assertion that he was not provided with a copy of the post-loss survey performed at the insurer's investigation. *Id.* In the present matter, the Defendant's only possible allegation in support of his proposed bad faith claim is that the survey performed by the insurer was, in his estimation, "inadequate." *See Defendant's Memorandum*, at 11. But, the Defendant fails to state how another survey came to or could have come to a different conclusion. Even if he had, without more, the Defendant has failed to sufficiently plead that Great Lakes Re acted in bad faith in handling his claim.

## II.     Herzig Cannot Circumvent the Federal Rules and Deny Plaintiff's Right to Elect to Proceed in Admiralty Without a Jury

If a claim is within a district court's "admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82." Fed. R. Civ. P. 9(h). Under Fed. R. Civ. P. 38(e), the "rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)."

Despite the plain language of the Federal Rules, Defendant claims that the he is "entitled" to a jury trial, and that "Great Lakes cannot deprive Herzig of his right to a jury trial merely because it filed this action first pursuant to this Court's admiralty jurisdiction." *Defendant's Memorandum*, at 12. In support of his argument, Defendant neglects to mention that the majority of cases in the Second Circuit to address the issue have recognized that a defendant's jury demand cannot defeat a plaintiff's right to a non-jury trial in a properly designated Rule 9(h) admiralty action. *See, e.g.*, *Fed. Ins. Co. v. PGG Realty, LLC*, No. 06 CIV. 2455 (JSR), 2007 WL 1149245, at *9 (S.D.N.Y. Apr. 17, 2007), *aff'd sub nom. Fed. Ins. Co. v. Keybank Nat. Ass'n*, 340 F. App'x 5 (2d Cir. 2009) ("it is hornbook law that a Rule '9(h) election for admiralty cannot be undone by the opposing party's jury demand").

In *St. Paul Fire and Marine Insurance Co. v. Holiday Fair, Inc.*, 1996 WL 148350 (S.D.N.Y. Apr. 2, 1996), the Southern District of New York rejected the "race to the courthouse" argument by a defendant in a case that is virtually identical to the present matter. *Id.*, at 1*. In that case, St. Paul Fire and Marine Insurance Company sought a declaration that it was not liable for certain alleged losses suffered by the defendant, Holiday Fair, Inc., under the marine

12

insurance policy at issue. *Id.* As the plaintiff, St. Paul had properly designated the action as one in admiralty. *Id.* Holiday Fair filed a counterclaim for recovery under the policy, which invoked the court's diversity jurisdiction, asserted non-admiralty claims, and demanded a jury trial. *Id.* Just like Defendant in the present matter, Holiday Fair argued that its supposed "right" to a jury trial on its counterclaims "should not be defeated by a 'race to the courthouse.' " *Id.* Then-Chief Judge Griesa rejected the defendant's attempt to defeat the plaintiff's proper exercise of federal procedure:

> "The invocation of admiralty jurisdiction is a long established right in our legal system, which is expressly recognized in Rule 9(h). The right to a non-jury trial in admiralty cases is expressly provided for in Rule 38(e). It would seem to be a reasonable application of these principles to hold that St. Paul's right to a non-jury trial based on its admiralty claim outweighs Holiday Fair's request for a jury trial based on its counterclaim. Suit by an insurance company for a declaratory judgment under a policy of marine insurance is not a mere 'race to the courthouse,' but is a normal and orderly procedure."

*Id.*, at *2.

Despite this precedent, there is one analogous case which Defendant cites in support of his argument, *Sphere Drake Ins. PLC v. J Shree Corp.*, 184 F.R.D. 258 (S.D.N.Y. 1999). *See Defendant's Memorandum*, at 13-14. While it is true that this case recognizes an admiralty defendant's "right" to have his or her counterclaims put to a jury, Herzig neglects to mention that this case is the exception to the rule. *Sphere Drake* is the only case in the Second Circuit to come to this conclusion, and research by undersigned counsel indicates that no other case within the Second Circuit has followed it in the nearly 20 years since the opinion was issued; therefore, it has been rightly ignored. Furthermore, the reasoning in *Sphere Drake* principally relies on two cases which are not persuasive: the first, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500

13

(1959), is not an admiralty case, and the second, *Wilmington Trust v. United States District Court for the District of Hawaii*, 934 F.2d 1026 (9th Cir.1991), *cert. denied*, 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992), is from the Ninth Circuit and therefore not controlling authority.

After *Sphere Drake*, all Second Circuit courts to address the issue have concluded that a defendant in an admiralty action does not have the right to submit his or her counterclaims to a jury, even if there is an independent basis of jurisdiction on its counterclaims, as discussed in-depth below. *See also Royal v. Deep Sea* 2004 WL 3670966, 2005 A.M.C. 640, 646 (S.D.N.Y. 2005) (not ruling on the issue, but stating in dicta that "the majority of courts in this District [] have held that a defendant [in admiralty] is not entitled to a jury trial with respect to its compulsory counterclaims...").

In the case of *Markel Am. Ins. Co. v. Linhart*, 2012 WL 2930207, discussed *supra*, the plaintiff insurer, Markel, commenced an action in admiralty against its insured, seeking a declaratory judgment that damage to defendant's yacht was not covered by the marine insurance policy. *Id.* at *1. The defendant filed an answer and demanded a jury trial on its counterclaims, just like the Defendant in the present matter. *Id.*, at *2. The Court granted the insurer's motion to strike the defendant's jury demand, stating "that defendant is not entitled to a jury trial on his counterclaims [....] A separate jury trial would [] undermine plaintiff's invocation of admiralty jurisdiction...." *Id.*, at *4.

In *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, No. 06 CIV. 3123 (CSH), 2008 WL 2980919 (S.D.N.Y. Aug. 1, 2008), the plaintiff insurer, American

14

Steamship Owners Mutual Protection and Indemnity Association, Inc., commenced an action in admiralty against its insured, Lafarge North America, Inc., seeking a declaratory judgment that alleged damages to third parties caused by Hurricane Katrina were not covered under the marine insurance policy at issue. *Id.*, at *1. The defendant demanded a jury trial on its legal counterclaims, which the plaintiff insurer moved to strike. *Id.* In granting the insurer's motion to strike, the Court stated that "the distinct majority of decisions [hold that] the plaintiff's Rule 9(h) designation trumps defendant's jury demand, and the entire case will be tried to the court without a jury." *Id.*, at *2.

*Fed. Ins. Co. v. PGG Realty, LLC*, No. 06 CIV. 2455 (JSR), 2007 WL 1149245 (S.D.N.Y. Apr. 17, 2007) is another case where a plaintiff insurer in admiralty action sought a declaratory judgment that the marine insurance policy at issue did not provide coverage to the defendant insured. In granting the plaintiff insurer's motion to strike the defendant's jury demand, the court stated that "By electing to proceed under 9(h) rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist." *Id.*, at *9 (internal citations omitted). The court noted that "it is hornbook law that a Rule 9(h) election for admiralty cannot be undone by the opposing party's jury demand." *Id.* (internal citations omitted). The court also dismissed the insured's bad faith counterclaim under Florida law, recognizing that it "has no counterpart under New York law." *Id.*

Lastly, the case of *Norwalk Cove Marina, Inc. v. S/V ODYSSEUS*, 100 F. Supp. 2d 113 (D. Conn. 2000) rejects the Defendant's argument. Although this case did not concern a marine

15

WHEREFORE, GREAT LAKES REINSURANCE (UK) SE respectfully requests that the Court deny Defendant's Motion for Leave to Amend Counterclaims and for a Jury Trial, and for all such further relief as may be appropriate under the premises.

Dated:     December 19, 2018
           Brookline, Massachusetts

>                    GOLDMAN & HELLMAN
>                    *Attorneys for Plaintiff*
>                    233 Harvard Street
>                    Suite 211
>                    Brookline, MA 02446
>                    (617) 566-4200 - Tel
>                    (617) 566-4292- Fax
>
>                    By: _Steven E. Goldman, Esq._
>                        STEVEN E. GOLDMAN
>                        #3913

insurer's declaratory judgment action, it is analogous nonetheless because the defendant sought a jury trial on its counterclaims, despite the fact that the plaintiff had designated it as an action in admiralty. In granting the plaintiff's motion to strike the defendant's jury demand, the court recognized that "[t]he majority of courts hold that the plaintiff electing to sue in admiralty has the right to determine the character of the action, which should not be disturbed by the defendant's counterclaims." *Id.*, at 114.

## CONCLUSION

For the reasons stated above, the Defendant's Motion should be denied. Notwithstanding the Defendant's disagreement with the conclusions of Great Lakes' Re's investigation into his claim, which would only be duplicative of his breach of contract claim, the Defendant has failed to allege any facts that could demonstrate bad faith by the Plaintiff. Furthermore, the Defendant's demand for a jury trial was made without recognizing that the majority of district courts in the Second Circuit do not recognize an admiralty defendant's right a jury trial on its counterclaims.