UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREAT LAKES REINSURANCE (UK) SE,

      Plaintiff,

-against-

PETER HERZIG,

      Defendant.

**ORDER**

16 Civ. 9848 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

    This action concerns a marine insurance dispute between Plaintiff Great Lakes Reinsurance ("Great Lakes") and Defendant Peter Herzig, the owner of a yacht insured by Great Lakes. Plaintiff brings this action under this Court's admiralty jurisdiction pursuant to Fed. R. Civ. P. 9(h). (Second Amended Complaint ("SAC") (Dkt. No. 48) ¶ 3) Pending before the Court is Defendant Herzig's motion to amend his counterclaims and for a jury trial. (Dkt. No. 62) For the reasons stated below, Defendant's motion will be denied.

## BACKGROUND

### I. FACTS

    According to the SAC, Herzig owns "Crescendo," a 62-foot yacht (hereinafter "the Vessel"). (SAC (Dkt. No. 48) ¶ 6) Great Lakes issued to Herzig a year-long $600,000 marine insurance policy for the Vessel (hereinafter "the Policy"), with an effective date of May 26, 2016. (Id. ¶ 13) In deciding to issue the Policy, Great Lakes relied on an application submitted by Herzig representing, inter alia, that the present value of the Vessel was $600,000. (Id. ¶¶ 9, 12) According to Great Lakes, in the application Herzig "misrepresented material facts regarding the extent and the dollar value of the work, the repairs, and/or the maintenance

performed on the [V]essel." (Id. ¶ 20) Great Lakes states that it would not have agreed to provide a $600,000 policy if Herzig had submitted accurate information in his application. (Id. ¶ 21)

On October 7, 2016, the Vessel was damaged in a hurricane. (Id. ¶ 16) Herzig subsequently made a claim against the Policy for $450,000, alleging that this sum was necessary to cover repairs to the Vessel. (Id. ¶ 17) Great Lakes investigated Herzig's claim, and concluded that the maximum cost of repairs would be $175,000. (Id. ¶ 18) Because of a dispute with Herzig about the amount necessary to effect repairs to the vessel, Great Lakes filed the instant case. (Id. ¶¶ 17-19)

## II. PROCEDURAL HISTORY

The original Complaint was filed on December 21, 2016, and sought a declaratory judgment that the Policy obligates Great Lakes to pay only $175,000 for the reasonable cost of repairs to the Vessel. (Dkt. No. 1) On December 29, 2016, after the filing of the Complaint, Herzig entered into a settlement agreement with Great Lakes in which he agreed to settle his claim for $175,000. (Answr. (Dkt. No. 49) ¶ 41) Great Lakes paid that sum, and Herzig signed a release. (SAC (Dkt. No. 48) ¶¶ 19, 30-31, 54) Despite the settlement agreement and release, Herzig has continued to demand payment of $450,000 from Great Lakes. (Id. ¶ 32)

Great Lakes filed an Amended Complaint on April 7, 2017. (Dkt. No. 8) In Herzig's Answer to the Amended Complaint and Counterclaims, he alleges breach of contract, fraud, rescission and breach of the covenant of good faith and fair dealing. (Answr. (Dkt. No. 14) ¶¶ 9-39) He also makes a jury demand. (Id. at 13)

Great Lakes filed pre-motion letters to dismiss the good faith and fair dealing claim as redundant of the breach of contract claims, and to strike the jury demand, because this case is before the Court pursuant to its admiralty jurisdiction. (Dkt. Nos. 19, 21)_Herzig

2

subsequently withdrew his good faith and fair dealing claim, while reserving his right to seek to move to amend his counterclaims at a later date. (Dkt. No. 31) The parties agreed to address Herzig's jury demand after the completion of discovery.

### A. The Second Amended Complaint

Great Lakes filed the SAC on June 13, 2018. Great Lakes seeks a declaratory judgment (1) that it is only obligated to pay the reasonable cost of repairs to the Vessel in the amount of $175,000; (2) that Herzig is bound by the settlement agreement and release he signed after Great Lakes filed the Complaint; (3) that the Policy is void ab initio because Herzig misrepresented material facts at the time the Policy was issued; and (4) because the Policy is void, Herzig must return the $175,000 payment made by Great Lakes. (SAC (Dkt. No. 48) ¶¶ 23-62)

### B. Herzig's Answer to the SAC and Counterclaims

On July 2, 2018 Herzig filed an Answer to the SAC, along with counterclaims against Great Lakes. According to Herzig, the Policy was an "agreed value" policy of $600,000. (Answr. (Dkt. No. 49) ¶ 11) "As a condition to providing coverage, [Great Lakes] required that a qualified marine surveyor conduct an out-of-water survey of the [V]essel to confirm that the amount of coverage requested was consistent with the value of the Vessel." (Id. ¶ 12) Great Lakes approved the survey, which concluded that the Vessel's then-present market value was $625,000. (Id. ¶¶ 14-15)

After the Vessel sustained damage in October 2016, Herzig promptly reported the loss. (Id. ¶¶ 16-17)

> After spending only approximately one month evaluating the subject loss, using methods that did not conform with widely-accepted industry standards, [Great Lakes], through its agents, represented to [Herzig] that based upon a purportedly thorough and professional

3

survey of the damages sustained, the sum of $175,000.00 was the maximum required to effect the covered repairs to the vessel.

(Id. ¶ 18)

While reviewing Herzig's claim, Great Lakes "unilaterally reduce[d] the Policy to $300,000 without discussing the matter or even providing advance notice . . . to [Herzig]," effective November 18, 2016. (Id. ¶¶ 22, 28) It did so even though Great Lakes "would not routinely question the valuation provided by a suitably experienced surveyor." (Id. ¶ 20) Here, an experienced surveyor had concluded – prior to the hurricane damage – that the market value of the Vessel was $625,000. (Id. ¶ 14) According to Herzig, such a unilateral reduction breached the terms of the Policy. (Id. ¶ 23)

On December 23, 2016, Great Lakes made an offer to settle the instant case for $175,000. (Id. ¶¶ 26-27) Great Lakes "agreed to provide continuing coverage for port risk only for a period of 30 days" at a value of $125,000. (Id. ¶¶ 27-29) In a December 29, 2016 email, Great Lakes notified Herzig of the reduction of the value of the Policy to $300,000 for the first time. (Id. ¶¶ 29-30) Great Lakes's counsel explained that "[w]ith an [a]greed [v]alue of $300,000[] . . . and with a pending claim for damages amounting to $175,000, the insured value of the [V]essel during the 30 days of continued coverage would be [$125,000]." (Id. ¶ 29)

Due to the reduction of the Policy's value, Herzig was entitled to a $1,954 refund on his insurance premium, which he has not received. (Id. ¶¶ 32-34)

"Based on [Great Lakes's] representations . . . [Herzig] believed that the policy reduction was valid and accepted a settlement in the amount of $175,000." (Id. ¶ 31) Herzig has since learned that Great Lakes's reduction in the value of the Policy is not valid. (Id. ¶ 36)

Finally, under the terms of the settlement agreement, Great Lakes was obligated to dismiss this action, but it did not do so. (Id. ¶ 35)

4

In his Answer to the SAC, Herzig asserts four counterclaims: (1) fraudulent inducement, in connection with the settlement agreement; (2) rescission of the settlement agreement; (3) breach of contract, in connection with Great Lakes's unilateral reduction in the Policy's value; and (4) breach of contract, in connection with Great Lakes's refusal to pay the cost of reasonable repairs to the Vessel. (Id. ¶¶ 37-77)

### C. Herzig's Motion to Amend His Counterclaims

Herzig now moves (1) to amend his counterclaims to add a claim for breach of the covenant of good faith and fair dealing; and (2) for his counterclaims to be heard by a jury. (Dkt. No. 62)

## DISCUSSION

### I. MOTION TO AMEND

Herzig seeks to amend his counterclaims to add a counterclaim for breach of the covenant of good faith and fair dealing. This proposed counterclaim relates to the manner in which Great Lakes has handled his insurance claim (see Def. Br. (Dkt. No. 63) at 13), and is premised on the following allegations:

- "Great Lakes authorized and relied upon the opinion of a surveyor who performed a cursory in-water survey of [the V]essel without conducting the appropriate tests and inspections recognized in the marine industry to learn the full extent of the damage to the [V]essel and the scope of work needed to fully repair it." (Def. Reply (Dkt. No. 65) at 6)

- Great Lakes "completely ignored" the $625,000 valuation of the Vessel when evaluating Herzig's claim, "in direct violation of Great Lake[s's] standard operating procedures." (Id. at 5) Instead, Great Lakes determined the Vessel's value by consulting "online listings" of similar yachts. (Id. at 6) Then, "[i]n violation of the terms of the [P]olicy, Great Lakes unilaterally . . . reduc[ed] the value of coverage [to $300,000] without providing any advance notice to Herzig . . . ." (Id.)

- Great Lakes invited Herzig to "make an offer to resolve [his claim] through a single, lump sum payment in advance of all repairs." (Id.) On December 19, 2016, Herzig made an offer of $300,000. (Id.; Def. Br. (Dkt. No. 63) at 14-15) Great Lakes then "abruptly discontinued negotiations and commenced this action," notifying Herzig "in

5

the midst of the December holidays, [and] demand[ing] that he accept $175,000 to resolve the matter and insisted upon the immediate termination of coverage." (Def. Reply (Dkt. No. 65) at 6)

- "Great Lakes, through its counsel, represented that the [reduction] was related to Great Lakes'[s] proposed settlement of Herzig's pending claim. Based on the [reduction] . . . Great Lakes demanded that Herzig accept a settlement payment of $175,000 and only 30 days of insurance in the amount of $125,000. Great Lakes, through its counsel, represented that the [reduction] was valid when, in fact, it violated the terms of the policy and had yet to be certified by the Excess Line Association of New York in accordance with New York State Insurance Law." (Id.) Great Lakes also falsely represented that it had issued Herzig a refund on his premium, consistent with the reduction in coverage. (Id. at 7)

- "Based on Great Lakes'[s] improper conduct and misrepresentations, Herzig executed a 'Policyholder's Release' which Great Lakes subsequently breached by failing to file a Stipulation of Dismissal with Prejudice concerning this action." (Id.)

### A. Legal Standard

A party may amend a pleading with the court's leave, and the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000).

An amendment would be futile if it "would not survive a motion to dismiss." On Track Innovations Ltd. v. T-Mobile USA, Inc., No. 12 Civ. 2224 (AJN) (JCF), 2014 WL 406497, at *4 (S.D.N.Y. Feb. 3, 2014) (citing AEP Energy Services Gas Holding Co. v. Bank of

6

America, N.A., 626 F.3d 699, 726 (2d Cir. 2010); Penn Group, LLC v. Slater, No. 07 Civ. 729 (MHD), 2007 WL 2020099, at *4 (S.D.N.Y. June 13, 2007)). "The opposing party bears the burden of establishing that an amendment would be futile." Id. (citing Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251, 253 (E.D.N.Y.2012)).

### B. Analysis

Here, Great Lakes does not argue that it would be prejudiced by the proposed amendment to Herzig's counterclaims, nor does it contend that Herzig acted in bad faith or unduly delayed in moving to amend. Great Lakes instead argues that amendment would be futile, because Herzig's good faith and fair dealing claim would not survive a motion to dismiss. (Pltf. Opp. (Dkt. No. 67) at 11)

#### 1. Breach of the Covenant of Good Faith and Fair Dealing

"Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance. The covenant 'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 98 (2d Cir. 2007) (citing and quoting Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995)). To state a claim for breach of this covenant, a plaintiff must plead that "'(1) [the] defendant [] owe[s the] plaintiff a duty to act in good faith and conduct fair dealing; (2) [the] defendant [] breach[ed] that duty; and (3) the breach of duty [] proximately cause[d the] plaintiff's damages.'" Washington v. Kellwood Co., No. 05 Civ. 10034 (DAB), 2009 WL 855652, *6 (S.D.N.Y. Mar. 24, 2009) (quoting Boyd v. Univ. of Ill., No. 96 Civ. 9327 (TPG), 2001 WL 246402, *10 (S.D.N.Y. 2001)).

Generally, breach of the covenant of good faith and fair dealing "'is merely a breach of the underlying contract.'" Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961

7

F.2d 1052, 1056 (2d Cir. 1992) (quoting Geler v. National Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)); see also Alter v. Bogoricin, No. 97 Civ. 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 2007) (dismissing good faith and fair dealing claim because "the covenant of good faith and fair dealing is not distinct from the underlying contract, and therefore, as a general rule, the cause of action alleging breach of good faith is duplicative of a cause of action alleging breach of contract" (citations and internal quotation marks omitted)). "[R]aising both claims in a single complaint is [generally] redundant, and courts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair dealing." Jordan v. Verizon Corp., No. 08 Civ. 6414 (GEL), 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008) (collecting cases and dismissing claim for breach of implied covenant of good faith and fair dealing without leave to replead).

"Consequently, a claim for breach of the implied covenant of good faith can survive a motion to dismiss 'only if it is based on allegations different from those underlying the accompanying breach of contract claim.'" Grand Heritage Mgmt., LLC v. Murphy, No. 06 Civ. 5977 (NRB), 2007 WL 3355380, at *6 (S.D.N.Y. Nov. 7, 2007) (quoting Siradas v. Chase Lincoln First Bank, N.A., No. 98 Civ. 4028 (RCC), 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999)). Accordingly, "to simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must . . . base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116 (PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009).

### 2. Herzig's Proposed Counterclaim

Herzig argues that his proposed good faith and fair dealing claim can stand along with his breach of contract claim, because they are based on different allegations: His breach of contract claims are based on Great Lakes's refusal to pay the reasonable cost of repairing the

8

Vessel, and its unilateral reduction of the Policy's value. (Def. Br. (Dkt. No. 63) at 15-16; Answr. (Dkt. No. 49) ¶¶ 60-77) His good faith and fair dealing claim, by contrast, is premised on the manner in which Great Lakes handled his claim. (Def. Br. (Dkt. No. 63) at 13)

In support of his motion, Herzig cites D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 59 Misc. 3d 714 (N.Y. Sup. Ct. 2018). (Id. at 14-16) In that case, the defendant issued an insurance policy for a building owned by plaintiff. D.K. Prop., Inc., 59 Misc. 3d at 716. The insured building sustained damage in October 2014, but the insurer did not make a coverage determination between that time and February 2017, when plaintiff filed suit. Id. During that time, the insurer "[made] unreasonable and burdensome demands for information; [ignored] plaintiff's documentation demonstrating the nature, extent and cause of the damage; and [forced] plaintiff to bring a lawsuit against the tortfeasors for damages and the instant lawsuit against [the insurer] for a determination as to coverage under the policy." Id. at 719. Plaintiff alleged that the insurer intentionally mishandled the claim "for the purpose of making the claim too expensive for plaintiff to pursue and, thereby . . . inducing plaintiff to abandon its claim for coverage." Id. at 717.

It was in these circumstances that the New York County Supreme Court and the First Department ruled that "a claim for breach of contract and one for bad faith handling of an insurance claim are not necessarily duplicative[,] . . . . [and that the] first and second causes of action [in that case] plead different conduct by [the] defendant . . . ." D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 168 A.D.3d 505, 507 (1st Dep't 2019).

Here, however, Herzig has not shown that his proposed good faith and fair dealing counterclaim is based on different allegations than his breach of contract counterclaims. Indeed, most of the factual allegations Herzig lists in support of his good faith and fair dealing

9

claim relate to either (1) Great Lakes's alleged failure to cover the reasonable cost of repairs to the Vessel; or (2) its unilateral decision to reduce the Policy value. (Def. Reply (Dkt. No. 65) at 6-7) These same matters provide the basis for Herzig's two breach of contract counterclaims. Herzig also complains that Great Lakes "blindsided" him by filing this action, and misled him during settlement negotiations. (Id.) Great Lakes was legally entitled to seek a declaratory judgment, however, and Herzig's claim that Great Lakes misled him during settlement negotiations is the premise for Herzig's fraud counterclaim.

In sum, the allegations here are a far cry from those in D.K. Prop., Inc., where the carrier allegedly engaged in extensive bad faith conduct over a period of nearly two and a half years, and never made a coverage decision.

The Court concludes that Herzig's proposed good faith and fair dealing counterclaim would not survive a motion to dismiss. Accordingly, Herzig's motion to amend his counterclaims will be denied.[1]

---

[1] "Even [where a good faith and fair dealing claim is] improper as its own separate cause of action[, however,] . . . an insured may be entitled to consequential damages on its breach of contract claim, beyond the limits of the policy, based on the insurer's bad faith." D.K. Prop., Inc., 59 Misc. 3d at 719 (citing Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 82 (1st Dep't 2001) ("[W]hile plaintiff's cause of action alleging bad faith conduct on the part of the insurer cannot stand as a distinct tort cause of action, we conclude that its allegations may be employed to interpose a claim for consequential damages beyond the limits of the policy for the claimed breach of contract."); Sikarevich Family L.P. v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014) ("Although plaintiff's claim for breach of the implied covenant of good faith and fair dealing cannot stand because it is duplicative of plaintiff's breach of contract claim, plaintiff may be entitled to consequential damages on its breach of contract claim, beyond the limits of its Policy, based on bad faith.")). Accordingly, the Court's decision as to Herzig's proposed good faith and fair dealing counterclaim is without prejudice to a future argument that he is entitled to recover consequential damages caused by Great Lakes's alleged bad faith.

## II. JURY TRIAL

Herzig also moves to have his counterclaims heard by a jury, despite the fact that Great Lakes filed this action under the Court's admiralty jurisdiction. (Def. Br. (Dkt. No. 63) at 16-18)

Under Fed. R. Civ. P. 9(h), where a claim "is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82." FRCP 9(h). Under Fed. R. Civ. P. 38(e), there is no right to a jury trial for admiralty or maritime claims under Rule 9(h). FRCP 38(e). Here, Great Lakes filed this action under Rule 9(h). (SAC (Dkt. No. 48) ¶ 3)

"It is established beyond question that the Seventh Amendment's guarantee of a jury trial in civil actions at common law does not extend to the trial of admiralty or maritime claims." Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., No. 06 CIV. 3123 (CSH), 2008 WL 2980919, at *1 (S.D.N.Y. Aug. 1, 2008).

> The present motion presents a question that has arisen in a considerable number of reported cases. A plaintiff properly designates its claim as an admiralty or maritime claim under Rule 9(h). Subject matter jurisdiction in the district court would also exist under the diversity statute. The defendant asserts common law counterclaims (such as breach of contract) and demands a jury trial on the counterclaims. Plaintiff moves to strike the jury demand. The rule derived from the distinct majority of decisions is that if the defendant's counterclaims arise out of the same contract as the plaintiff's claims and involve the same operative facts, the plaintiff's Rule 9(h) designation trumps defendant's jury demand, and the entire case will be tried to the court without a jury.
>
> A number of these cases present exactly the same circumstances as the case at bar: a marine risk insurer's claim for a declaration of non-coverage, designated as an admiralty claim under Rule 9(h), and the purported insured's counterclaim for breach of the contract of insurance, coupled with a jury demand.

Id. at *1-2 (citing St. Paul Fire and Marine Insurance Co. v. Holiday Fair, Inc., No. 94 Civ. 5707 (TPG), 1996 WL 148350 (S.D.N.Y. April 2, 1996)); see also Fed. Ins. Co. v. PGG Realty, LLC,

11

No. 06 CIV. 2455 (JSR), 2007 WL 1149245, at *8-9 (S.D.N.Y. Apr. 17, 2007) (granting plaintiff's motion to strike defendant's jury demand in marine insurance claim filed under Fed. R. Civ. P. 9(h)), aff'd sub nom. Fed. Ins. Co. v. Keybank Nat. Ass'n, 340 F. App'x 5 (2d Cir. 2009); Markel Am. Ins. Co. v. Linhart, No. 11 Civ. 5094 (SJF) (GRB), 2012 WL 2930207, at *3-4 (E.D.N.Y. July 11, 2012) (same); Norwalk Cove Marina, Inc. v. S/V ODYSSEUS, 100 F. Supp. 2d 113, 114 (D. Conn. 2000) ("The majority of courts hold that the plaintiff electing to sue in admiralty has the right to determine the character of the action, which should not be disturbed by the defendant's counterclaims. Accordingly, plaintiff's motion to strike [defendant's jury demand] will be granted.").

There is one case in this District that concludes otherwise: In Sphere Drake Ins. PLC v. J. Shree Corp., 184 F.R.D. 258, 261 (S.D.N.Y. 1999), the court held that the defendant was entitled to a jury trial on his compulsory counterclaims sounding in law, despite the fact that the action was filed under Fed. R. Civ. P. 9(h). Id. Finding Ninth Circuit precedent persuasive on this issue, Judge Berman concluded that permitting a jury trial on the defendant's counterclaims was necessary to "preserve[] a litigant's 'inviolate' right to a trial by jury." Id. In the twenty years since Sphere Drake Ins. PLC was decided, no court in this District has followed that decision.

This Court finds the prevailing view in this Circuit persuasive, and concludes that Herzig is not entitled to a jury trial on his counterclaims. "The right to a non-jury trial in admiralty cases is expressly provided for in Rule 38(e)." St. Paul Fire & Marine Ins. Co., 1996 WL 148350, at *2. "By electing to proceed under 9(h) rather than by invoking diversity jurisdiction, 'the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist.'" Fed. Ins. Co., 2007 WL 1149245, at *9 (quoting Harrison v. Flota

Mercante Grancolombiana, S. A., 577 F.2d 968, 986 (5th Cir. 1978)). Moreover, although Herzig argues that his counterclaims raise issues distinct from those in Great Lakes's claims (Def. Reply (Dkt. No. 65) at 10), the Court concludes that his counterclaims "arise out of the same contract as the plaintiff's claims and involve the same operative facts." Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc., 2008 WL 2980919, at *1. Accordingly, Herzig has no right to a jury trial, and holding a bench trail on Great Lakes's claims and a jury trial on Herzig's counterclaims would be inefficient and a waste of judicial resources. See Markel Am. Ins. Co., 2012 WL 2930207, at *4 ("A separate jury trial would not only undermine plaintiff's invocation of admiralty jurisdiction, but would be wasteful, duplicative, and risk inconsistent results." (citing Windsor Mount Joy Mut. Ins. Co. v. Johnson, 264 F.Supp.2d 158, 162-63 (D.N.J. 2003)).

Herzig's motion for a jury trial on his counterclaims will be denied.

## CONCLUSION

For the reasons stated above, Herzig's motion to amend and motion for a jury trial are denied in their entirety. The Clerk of Court is directed to terminate the motion (Dkt. No. 62).

There will be a telephone conference in this matter on **October 21, 2019 at 12:30 p.m.** The parties will initiate the call. Once both sides are on the line, they should contact Chambers at 212-805-0224.

Dated: New York, New York
September 23, 2019

SO ORDERED.

_Paul Gardephe_
Paul G. Gardephe
United States District Judge