UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT LAKES REINSURANCE
(UK) SE,
                          Plaintiff,

          - against -

PETER HERZIG,
                          Defendant.

**MEMORANDUM
OPINION & ORDER**

16 Civ. 9848 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is an insurance dispute regarding Defendant Peter Herzig's claim for damage
to his yacht under a policy issued by Plaintiff Great Lakes Reinsurance (the "Policy").  A bench
trial is scheduled for July 10, 2023.  (June 9, 2023 Order (Dkt. No. 134))

        On May 18, 2023, this Court granted Great Lakes' motion for summary judgment
as to its Second Cause of Action – a declaratory judgment that a December 29, 2016 release the
parties executed regarding Herzig's claim (the "Release") is valid and binding – and otherwise
denied the motion.  This Court also granted Great Lakes' motion to strike the declaration of
Herzig's former lawyer, Adam Heffner, which Herzig had filed in support of his opposition to
Great Lakes' summary judgment motion.  This Court's May 18, 2023 decision does not address
Herzig's counterclaims, because Great Lakes did not seek summary judgment on those
counterclaims.  (May 18, 2023 Memorandum Opinion and Order (Dkt. No. 123))  See Great
Lakes Reinsurance (UK) SE v. Herzig ("Herzig"), No. 16 CIV. 9848 (PGG), 2023 WL 3560578
(S.D.N.Y. May 18, 2023).

        Given the ruling that the Release is valid, this Court ordered Herzig to "submit a
letter stating whether he intends to proceed to trial on his First, Second, and Third
Counterclaims, and [to] show[] cause why his Fourth Counterclaim [– alleging breach of contract

in connection with Great Lakes' failure to pay the reasonable cost of repairs –] should not be dismissed." Herzig, 2023 WL 3560578, at *34.[1]

Pending before this Court are (1) Herzig's response to the show-cause order (Dkt. No. 130); (2) Herzig's motion for reconsideration pursuant to Local Rule 6.3 (Dkt. Nos. 131-32); and (3) Great Lakes' cross-motion for reconsideration (Dkt. No. 137).[2]

For the reasons stated below, Herzig's motion for reconsideration will be denied; Herzig's Fourth Counterclaim will be dismissed; and Great Lakes' cross-motion for reconsideration will be denied.

---

[1] The Court also ordered Great Lakes to show cause why its First, Third, and Fourth Causes of Action should not be dismissed as moot and/or meritless in light of the Release. Herzig III, 2023 WL 3560578, at *32. In a June 1, 2023 letter, Great Lakes states that "there would be no objection to entry of an Order of Dismissal Without Prejudice as to each of the [First, Third, and Fourth] Causes of Action." (Dkt. No. 129) Accordingly, on June 9, 2023, this Court issued an order stating that "the SAC's First, Third, and Fourth Causes of Action are dismissed on consent." (June 9, 2023 Order (Dkt. No. 134) at 1) Great Lakes then inexplicably filed a new action repleading the Third and Fourth Causes of Action. (Cmplt., 23 Civ. 5050 (PGG) (Dkt. No. 2))

[2] Great Lakes' filing is styled "Combined Opposition to Defendant's Motion for Reconsideration, Notice of Cross Motion for Reconsideration, or in the Alternative, Motion to Alter or Amend a Judgment, or, in the Alternative, Motion for Relief from a Final Judgment, Order, or Proceeding, and Incorporated Memorandum of Law." (Dkt. No. 137 at 1) For simplicity, the Court refers to Great Lakes' filing as a "cross-motion for reconsideration."

BACKGROUND[3]

I.      FACTS[4]

In July 2016, Great Lakes' underwriter and claims agent, Concept Special Risks Ltd., issued an insurance policy "provid[ing] coverage of $600,000 for the Crescendo," a 62-foot yacht that Herzig bought in 1998 for approximately $1.4 million.  Herzig, 2023 WL 3560578, at *1, *4.

"On or about October 7, 2016, Hurricane Matthew caused damage to the Crescendo while it was in port near Jacksonville, Florida. . . .  [Herzig] submitted a claim under the Policy to Concept."  Id. at *4 (footnote omitted).

While Herzig's claim was pending, "Concept's endorsement department . . . issued an endorsement, dated November 18, 2016 [(the "November 2016 Endorsement")], which states that '[t]he Hull Sum insured [i.e., the coverage limit] is reduced to $300,000. . . . [i]n consideration of which, a Return Premium of US$1,954 is due.'"  Concept did not obtain Herzig's consent before issuing the November 2016 Endorsement, and although Concept sent a copy of the Endorsement to Herzig's insurance broker, John Poplawsky, the day it was issued, the copy it sent was not approved and stamped by the Excess Line Association of New York, as required under New York law.  Id. at *5 (quoting November 2016 Endorsement).

> After Concept's surveyor inspected the Crescendo, Herzig obtained a repair estimate from two boat yards and retained a lawyer – Adam Heffner.  Heffner had represented Herzig in negotiations with AIG regarding [an] earlier insurance claim.  Herzig then began negotiating a settlement of his claim with [Doug] Wager, Concept's adjuster.

---

[3]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[4]  Herzig sets out the background to the parties' dispute in detail, and the Court assumes familiarity with that decision.

Wager made a settlement offer to Herzig, and on December 19, 2016, Herzig emailed a counterproposal to Wager.  In the December 19, 2016 email . . . . Herzig proposed that Concept make a lump-sum payment of $300,000 to him by December 26, 2016; that the Policy remain in effect for its duration; and that Herzig provide Concept with a release accepting responsibility for any costs above the agreed payment of $300,000.

On December 21, 2016, Great Lakes filed the Complaint.  (Dkt. No. 1)  The Complaint seeks a declaratory judgment that the Policy provides coverage for "no more than the reasonable cost of repairs," and that here the reasonable cost of repairs amounted to no more than $175,000.  (Id. at 5-6)

Id. at *6 (further citations and quotations omitted).

Between December 27 and December 29, 2016, Heffner and Great Lakes' lawyer, Steven Goldman, negotiated Herzig's claim by phone, email, and letter.  Herzig contends that Goldman made a number of misrepresentations and threats during the negotiations.  Id. at *6-9, *20.  At summary judgment, the parties submitted the emails and letters exchanged during the negotiations, and Herzig submitted declarations from himself and Heffner regarding the negotiations.  (Def. R. 56.1 Stmt., Exs. G, N, 17 (Herzig Decl.), and 18 (Heffner Decl.) (Dkt. Nos. 108-8, -15, -18, -19); Heffner/Goldman Ltrs. (Dkt. No. 115))

On December 29, 2016, [following the negotiations,] Herzig executed a policyholder's release (the "Release").  The Release states that – in exchange for a payment of $175,000 – Herzig

"[r]elease[s], acquit[s], and forever discharge[s] [Great Lakes] and Concept Special Risks Ltd. . . . of and from any and all [actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever in law, admiralty, or equity] which [Herzig or his] heirs, executors, administrators and assigns ever had, now have, or hereafter can, shall, or may have for . . . any and all known and unknown damage and/or property damage resulting . . . from the incident and the resulting claim for insurance coverage involving . . . Crescendo insured under [the Policy] which is alleged to have occurred on or about October 7, 2016 . . . which incident and resulting claim under [the Policy] was the subject of the Complaint in [this case].

. . . .

In making this release and agreement it is understood and agreed that I am relying wholly upon my own judgment, belief, and knowledge of the nature, extent and duration of said injuries, and that I have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by persons, firms or corporations who are hereby released, or by any person or persons representing him or them.

. . . .

It is further agreed that a Stipulation for Dismissal with Prejudice pertaining to the above referenced Complaint filed by the Releasors [defined as 'Peter Herzig'] and/or the latter's counsel will be provided by Releasors and/or their counsel within 30 days of the date of this agreement."

Herzig, 2023 WL 3560578, at *9 (citations omitted).

Heffner died on August 31, 2022, after Great Lakes' summary judgment motion was fully briefed.  Id.

## II.   PROCEDURAL HISTORY

On June 13, 2018, Great Lakes filed the Second Amended Complaint ("SAC"), which asserts four causes of action.  The First Cause of Action seeks a declaration that Great Lakes owes no more than $175,000 under the Policy, that being the reasonable cost of repairing the October 2016 damage to the Crescendo.  The Second Cause of Action seeks a declaration that the Release is valid and binding.  The Third and Fourth Causes of Action seek declarations that Herzig's misrepresentations of material fact in procuring the Policy rendered the Policy void ab initio and entitle Great Lakes to restitution of its $175,000 payment in connection with the Release.  (Dkt. No. 48)

On July 2, 2018, Herzig filed his Answer to the SAC with counterclaims.  (Dkt. No. 49)  The counterclaims are for fraud, rescission, and breach of contract.  (Id. at 15-21, ¶¶ 37-77)

On January 29, 2021, Great Lakes moved for summary judgment on the SAC's Second, Third, and Fourth Causes of Action.  As noted above, Great Lakes did not seek summary judgment on Herzig's counterclaims.  (Dkt. No. 91)

In an October 13, 2022 letter, Herzig informed this Court of Heffner's death. (Dkt. No. 114)  In a December 22, 2022 order, this Court directed the parties to make supplemental submissions addressing whether the Court should consider Heffner's declaration – offered in opposition to Great Lakes' summary judgment motion – given his death.  (Dkt. No. 116)  On January 5, 2023, Great Lakes moved to strike Heffner's declaration (Dkt. No. 118), and on January 12, 2023, Herzig filed his opposition to Great Lakes' motion to strike, arguing that Heffner's declaration was admissible under the residual exception to the hearsay rule, pursuant to Rule 807 of the Federal Rules of Evidence.  (Dkt. No. 119)

On May 18, 2023, this Court granted Great Lakes' motion to strike and granted in part Great Lakes' motion for summary judgment.

As to Great Lakes' motion to strike, the Court concluded that "the Heffner declaration contains hearsay statements that are not admissible under the residual exception. Accordingly, Great Lakes' motion to strike the declaration will be granted.  This Court will likewise not consider any of the corresponding paragraphs of the Herzig declaration, in which Herzig reports what Heffner told him about what Goldman had said."  Herzig, 2023 WL 3560578, at *20.  The Court nonetheless analyzed the relevant portions of the Heffner declaration, and noted that it "would reach the same conclusion even if the Heffner declaration were admissible."  Id. at *27 n.20, *30 nn.23, 25; see also id. at *7 n.9.

The Court granted Great Lakes summary judgment on its Second Cause of Action, holding that (1) "Great Lakes ha[d] established a prima facie case that the Release [was]

an enforceable contract"; and (2) Herzig had not presented a material issue of fact as to

fraudulent inducement, duress, or prior material breach – the affirmative defenses he had raised

in opposing Great Lakes' summary judgment motion.  Id. at *20, *27, *30.  The Court denied

Great Lakes summary judgment as to the SAC's Third and Fourth Causes of Action.  Id. at *30-

31.

On June 1, 2023, Herzig filed his response to this Court's show-cause order as

well as his motion for reconsideration.  (Dkt. Nos. 130-32)

On June 16, 2023, Great Lakes filed its cross-motion for reconsideration.  (Dkt.

No. 137)

On June 23, 2023, Herzig filed a reply in support of his motion for

reconsideration as well as his opposition to Great Lakes' cross-motion for reconsideration.  (Dkt.

No. 141)

On June 28, 2023, Great Lakes filed a reply in support of its cross-motion for

reconsideration.  (Dkt. No. 153)

## **DISCUSSION**

## I.    **HERZIG'S MOTION FOR RECONSIDERATION**

Herzig asks this Court to reconsider its rulings regarding (1) the admissibility of

those portions of Herzig's declaration relaying what Heffner told him about Goldman's

statements; and (2) Herzig's fraudulent inducement affirmative defense.  (Herzig

Reconsideration Mot. (Dkt. No. 131); Herzig Reconsideration Br. (Dkt. No. 132))  Herzig does

not challenge this Court's rulings concerning (1) the admissibility of the Heffner declaration; (2)

Herzig's duress defense; or (3) Herzig's affirmative defense of prior material breach.  (Herzig

Reconsideration Br. (Dkt. No. 132) at 6 n.2)

A.      **Legal Standards**

1.      **Motion for Reconsideration**

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012).  "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).  "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (ellipsis in original) (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (in turn quoting Carolco Pictures, Inc. v.

<u>Sirota</u>, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))).  "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." <u>Id.</u>

### 2.   <u>Hearsay</u>

Rule 801(c) of the Federal Rules of Evidence provides that

"Hearsay" means a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Fed. R. Evid. 801(c).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Because of this admissibility requirement, "'[h]earsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [an] affidavit.'" <u>Major League Baseball Properties, Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 310 (2d Cir. 2008) (quoting <u>Beyah v. Coughlin</u>, 789 F.2d 986, 989 (2d Cir. 1986)).  Accordingly, at summary judgment, the "proponent of [an] out-of-court statement bears [the] burden of proving it fits into [a] hearsay exception." <u>Evans v. Port Auth. of New York & New Jersey</u>, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) (citing <u>United States v. Robbins</u>, 197 F.3d 829, 838 (7th Cir. 1999)).

### 3.   <u>Fraudulent Inducement as a Defense to a Release</u>

"'Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'" <u>Sharon v. 398 Bond St., LLC</u>, 169 A.D.3d 1079, 1080 (2d

Dept. 2019) (quoting <u>Sicuranza v. Philip Howard Apts. Tenants Corp.</u>, 121 A.D.3d 966, 967 (2d

Dept. 2014))  "'[A] signed release shifts the burden . . . going forward . . . to the [party releasing

the claim] to show that there has been fraud, duress or some other fact which will be sufficient to

void the release.'"  <u>Id.</u> at 1081 (quoting <u>Davis v. Rochdale Vil., Inc.</u>, 109 A.D.3d 867, 867 (2d

Dept. 2013)).

   "Under New York law, to establish a claim for fraudulent inducement or fraud, a

plaintiff must successfully allege '(1) a knowingly false representation of a material fact and (2)

detrimental reliance thereon.  The false representation can be either a misrepresentation or the

material omission of a fact.  Reliance means "reasonable" reliance.'"  <u>Elite Physician Servs.,</u>

<u>LLC v. Citicorp Payment Servs., Inc.</u>, No. 06 CIV. 2447 (BSJ), 2009 WL 10669137, at *6

(S.D.N.Y. Oct. 9, 2009) (quoting <u>Junk v. Aon Corp.</u>, No. 07 Civ. 4640, 2007 U.S. Dist. LEXIS

89741, at *18-19 (S.D.N.Y. Dec. 3, 2007))  "Evidence that [a party] is sophisticated and that [a

party] was represented by counsel is relevant to the issue of reasonable reliance, but it is not

dispositive of it."  <u>Rekor Sys., Inc. v. Loughlin</u>, No. 19-CV-7767 (LJL), 2022 WL 789157, at *7

(S.D.N.Y. Mar. 14, 2022) (citing <u>Crigger v. Fahnestock & Co.</u>, 443 F.3d 230, 235 (2d Cir.

2006)).

   Where a party asserting a fraud claim "'has the means of knowing, by the exercise

of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must

make use of those means, or he will not be heard to complain that he was induced to enter into

the transaction by misrepresentations.'"  <u>Schlaifer Nance & Co. v. Est. of Warhol</u>, 119 F.3d 91,

98 (2d Cir. 1997) (quoting <u>Mallis v. Bankers Trust Co.</u>, 615 F.2d 68, 80-81 (2d Cir. 1980)); <u>see</u>

<u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d 1531, 1542 (2d Cir. 1997) (surveying

New York case law and explaining that New York courts find reliance unreasonable where the

"relevant facts" regarding a misrepresentation or omission "were easily accessible to the relying

party"). Accordingly, "[a] plaintiff cannot establish justifiable reliance or a duty to disclose

where the information at issue was a matter of public record that could have been discovered

through the exercise of ordinary diligence." 246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.,

No. 09-CV-889 NGG JMA, 2012 WL 4174862, at *14 (E.D.N.Y. Sept. 18, 2012). Similarly,

"New York courts have determined as a matter of law that a party's reliance was unreasonable

where the alleged misrepresentation is explicitly contradicted by the written agreement."

Robinson v. Deutsche Bank Tr. Co. Americas, 572 F. Supp. 2d 319, 323 (S.D.N.Y. 2008).

      B.      **Analysis**

          1.      **Ruling that the Herzig Declaration Contains Inadmissible Hearsay**

            a.      **Whether the Court Violated Rule 56(f)**

This Court held in Herzig that "Herzig's statements about what Heffner told him

about what Goldman told Heffner constitute hearsay . . . because these statements would be

offered for the truth of the matter asserted – i.e., that Goldman in fact made these

misrepresentations and threats to Heffner." Herzig, 2023 WL 3560578, at *14 n.11.

Herzig contends that – in ruling that portions of Herzig's declaration were

inadmissible hearsay – this Court violated the notice provision of Rule 56(f) of the Federal Rules

of Civil Procedure, which provides that "[a]fter giving notice and a reasonable time to respond,

the court may . . . grant the motion [for summary judgment] on grounds not raised by a party."

Herzig further contends that the Court's hearsay ruling is wrong on the merits. (Herzig

Reconsideration Br. (Dkt. No. 132) at 8-12, 23-28)

As an initial matter, although the Court ruled that the Heffner declaration and the

corresponding portions of Herzig's declaration are inadmissible hearsay, it nevertheless weighed

these materials and assumed "that Goldman in fact made the[] misrepresentations and threats [at

issue] to Heffner." Herzig, 2023 WL 3560578, at *14 n.11; see id. at *27 n.20, *30 nn.23, 25. As discussed in Herzig and as noted above, the Court concluded that even if the Heffner declaration and the corresponding statements in Herzig's declaration were considered, Great Lakes would nonetheless be entitled to summary judgment on the SAC's Second Cause of Action. Accordingly, Herzig's reconsideration motion raises a moot point.

In any event, there is no merit to Herzig's argument that this Court was required to provide notice to him – pursuant to Fed. R. Civ. P. 56(f) – that the Heffner declaration and the corresponding portions of Herzig's declaration constitute inadmissible hearsay. Herzig was well aware of the hearsay issue regarding the Heffner declaration and the corresponding portions of his declaration. Indeed, he addressed the hearsay issue in briefing.

Herzig argues that Great Lakes

> did not seek to strike any portion of the Herzig Declaration on its motion to strike
> . . . and Herzig did not address it in opposition . . . . [T]he Court did not provide
> Herzig with notice that it might consider [the admissibility of Herzig's
> declaration] . . . . [The Court] was . . . required to give the parties notice and a
> reasonable opportunity to respond . . . . [T]hose errors prejudiced Herzig.

(Herzig Reconsideration Br. (Dkt. No. 132) at 9-10 (citations omitted))

Under Fed. R. Civ. P. 56(c)(4), however, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Accordingly, Rule 56(c)(4) provided clear notice to Herzig that the declarations he submitted in opposition to Great Lakes' summary judgment would only be considered if they were admissible at trial. The portions of Herzig's declaration at issue do not meet the evidentiary requirements of Rule 56(c)(4): Herzig does not have personal knowledge of what Goldman allegedly said to Heffner; Herzig's statements about what Heffner told him about what Goldman said to Heffner are not admissible at trial, because they are

inadmissible hearsay; and Herzig is not competent to testify about what Goldman allegedly said to Heffner.  Accordingly, pursuant to Rule 56(c)(4), this Court could not consider at summary judgment Herzig's statements about what Heffner told him about what Goldman allegedly said to Heffner.  Herzig cites no case holding or suggesting that this Court was obligated to give him notice of Rule 56(c)(4) or how the hearsay rule applies to what Heffner told him about what Goldman had said to Heffner.  Indeed, it was Herzig's obligation to support his opposition with material that meets the evidentiary requirements of Rule 56(c)(4).

Moreover, a court may, in its discretion, consider the admissibility of evidence offered at summary judgment even when no objection has been made.  See Kovalchik v. City of New York, No. 09-CV-4546 RA, 2014 WL 4652478, at *6 n.7 (S.D.N.Y. Sept. 18, 2014) ("[A] party may waive its objection to the admissibility of a document at the summary judgment stage by failing to object. . . . [Defendant's] reply brief does not argue specifically that the statements are inadmissible.  Nonetheless, the Court deems it appropriate to consider [the admissibility of these statements] . . . .  Insofar as the purpose of summary judgment is to prevent trials that are unnecessary because of an absence of material issues of fact for the jury to decide, it would seem inappropriate to permit the case to proceed where the only evidence supporting Plaintiff's theory is plainly inadmissible.") (quotations omitted); Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) ("Here, the affidavits lacked signatures and attestation before a notary public . . . . Therefore, we hold that the district court was authorized to exclude sua sponte such affidavits from its consideration of the first summary judgment motion."); Heywood v. Samaritan Health Sys., 902 F. Supp. 1076, 1079 (D. Ariz. 1995) ("[I]f a party fails to move to strike an affidavit that is allegedly defective under Rule [56(c)], he waives any objection to it.  However, the court

can disregard inadmissible material <u>sua sponte</u>.") (citing <u>United States v. Dibble</u>, 429 F.2d 598, 603 (9th Cir. 1970); further quotation omitted).

In any event, Herzig was well aware of the hearsay issue regarding the Heffner declaration and the corresponding portions of Herzig's declaration, in which he recounted what Heffner had told Herzig about what Goldman had allegedly said to Heffner.  In opposing Great Lakes' motion to strike Heffner's declaration, Herzig argued that the Heffner declaration was admissible under the residual exception to the rule against hearsay (Herzig Opp. to Mot. to Strike (Dkt. No. 119) at 9-18), and asserted that "Rule 807 confirms that a hearsay statement is not excluded by the rule against hearsay if: '(1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.'" (<u>Id.</u> at 10 n.5 (quoting Fed. R. Evid. 807(a))  In sum, Herzig was well aware of the hearsay issue regarding both Heffner's declaration and Herzig's own recounting of what Heffner told him about Goldman's alleged threats and misrepresentations.

The portions of Herzig's declaration in which Herzig "states that Heffner relayed Goldman's alleged misrepresentations and threats," <u>Herzig</u>, 2023 WL 3560578, at *14 n.11, are the only "evidence . . . corroborating [Heffner's] statement[s]."  Accordingly, under the plain language of Rule 807 – which Herzig quoted to this Court in his briefing – the Court would necessarily scrutinize those portions of Herzig's declaration that allegedly corroborated the statements in Heffner's declaration, including determining whether Herzig's statements were admissible.  The analysis to which Herzig objects was both unavoidable and predictable.

In sum, this Court did not violate Rule 56(f) in holding that Herzig's statements in his declaration about what Heffner told him about what Goldman said to Heffner are inadmissible hearsay.

> **b.    Whether Herzig's Statements in His Declaration About What Heffner Told Him About What <u>Goldman Said to Heffner Are Admissible</u>**

Herzig argues that Herzig's statements in his declaration about what Heffner told him about what Goldman allegedly said to Heffner are admissible to show the "effect on the listener" or "the fact that a statement was made."  According to Herzig,

> <u>both</u> Goldman's statements to Heffner <u>and</u> Heffner's statements to Herzig would be admissible because each had an effect on the respective listeners, Heffner and Herzig, concerning material facts.  They showed that Goldman made a statement to Heffner, Heffner advised Herzig, and Heffner's statement to Herzig was the reason Herzig accepted the settlement offer and signed the Release before December 30. . . .

> [Further,] the Order did not account for the possibility regarding Herzig's Declaration that there <u>were</u> statements Goldman made to Heffner that were <u>not</u> reflected in the emails.  Because Heffner's Declaration, and moreover, his statements thereafter to Herzig, would establish the fact that Goldman and Heffner made statements to one another outside of the emails' contents, that fact would be non-hearsay.

(Herzig Reconsideration Br. (Dkt. No. 132) at 25-26 (emphases in original))

This is nonsense.  Herzig did not offer the Heffner declaration and his own declaration merely to show the effect of Goldman's alleged statements on Heffner's mind and on his own mind.  In opposing Great Lakes' motion for summary judgment, Herzig argued that he "relied on . . . material representations made by Goldman," and that "Goldman warned that, if Herzig did not accept [Great Lakes'] terms by the end of the workweek (which was <u>the next day</u>, December 30), his insurance would be immediately cancelled."  (Herzig Opp. to Sum. J. (Dkt. No. 106) at 14, 25 (emphasis in original))  In support of these assertions, Herzig cited those portions of the Heffner and Herzig declarations that discussed what Goldman had allegedly said

to Heffner.  (See id.)  Similarly, in his opposition to Great Lakes' motion to strike, Herzig argued

that "Heffner's Declaration contains material, probative facts based on his personal knowledge,

providing his recollection of the pivotal communications and discussions with Mr. Goldman that

ultimately induced Mr. Herzig to agree to a low-ball settlement," namely, that (1) "Mr. Goldman

warned that if Mr. Herzig did not agree to accept $175,000 and 30 days of insurance coverage

limited to port risk only by the next day, his insurance would be immediately cancelled"; and (2)

on calls with Heffner, "Goldman made three separate misrepresentations."  (Herzig Opp. to Mot.

to Strike (Dkt. No. 119) at 12-13 (emphasis in original))

        Accordingly, Herzig offered Heffner's declaration – an out-of-court statement by

an unavailable declarant – for the truth of what the declaration says – i.e., that Goldman made

misrepresentations and threats to Heffner.  Similarly, Herzig seeks to offer testimony regarding

Heffner's oral statements to Herzig about what Goldman said to Heffner – which also constitute

out-of-court statements – for the truth of what Heffner said to Herzig – i.e., that Goldman made

misrepresentations and threats to Heffner.  As this Court explained in Herzig, these statements

are inadmissible hearsay.  See Herzig, 2023 WL 3560578, at *14 n.11 (citing Sarno v. Douglas

Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) ("[affiant's] statement as to

what he 'was told' was hearsay that would not be admissible at a trial," and therefore properly

not considered on summary judgment); Contemp. Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97,

105 (2d Cir. 1981) (statement in affidavit by member of plaintiff religious organization that a

third party had said that defendant "had once referred to plaintiff's members as 'crazy priests'"

was an "offering of hearsay" that – at the summary judgment stage – could not be considered as

evidence that defendant had engaged in "religious harassment")).

Accordingly, this Court did not err in ruling that the Heffner declaration and

Herzig's corresponding statements in his declaration constitute inadmissible hearsay.[5]

---

[5] In a footnote, Herzig contends that (1) "Heffner's statements to Herzig . . . could also qualify as a present sense impression [pursuant to] Fed. R. Evid. 803(1)"; and (2) "Herzig also could seek admission of Goldman's statements under Fed. R. Evid. 801(d)(2)(C) & (D) [as an] admission."  (Herzig Reconsideration Br. (Dkt. No. 132) at 26 n.15)  Neither assertion is correct.

As to present sense impression, Rule 803(1) requires the proponent to prove either a "precisely contemporaneous declaration" or "near contemporaneity."  United States v. Obayagbona, 627 F. Supp. 329, 340 (E.D.N.Y. 1985) (admitting recording of undercover officer's statement about narcotics sample made "only two minutes and 25 seconds after the arrest and less than 15 minutes after delivery of the sample"); see United States v. Brewer, 36 F.3d 266, 271-72 (2d Cir. 1994) (present sense impression not established because out-of-court statement – a witness identification – described a "recollection of a prior event," not a contemporaneous or just-finished event).  Here, the record does not reveal how much time elapsed between (1) the calls between Heffner and Goldman, and (2) Heffner's oral statements to Herzig about Heffner's calls with Goldman.  (See Heffner Decl. (Dkt. No. 108-19) ¶¶ 18, 21-22 (describing calls with Goldman, but not stating when they occurred); Herzig Decl. (Dkt. No. 108-18) ¶¶ 26, 29-30 (describing Heffner's oral statements to Herzig about his calls with Goldman, but not stating when Heffner made his statements to Herzig)).  Compare United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982) (contemporaneity requirement of present sense impression satisfied when out-of-court declarant, "[w]ithin a matter of no more than a few seconds . . . laid down the phone and described the conversation to [witness who testified in court]") (quotation marks omitted).  Herzig has thus not met his "burden of proving that [Heffner's oral statements to Herzig about Heffner's calls with Goldman] fits into [the] hearsay exception."  Evans, 192 F. Supp. 2d at 263 n.121.

As to Herzig's admission argument, Goldman's statements to Heffner could properly be admitted at trial through Heffner as admissions.  But Heffner is not available as a witness, and given these circumstances, Heffner's statements about what Goldman said to him are inadmissible hearsay, whether offered through Heffner's declaration, Herzig's declaration, or Herzig's testimony at trial.  See United States v. Cummings, 858 F.3d 763, 773-74 (2d Cir. 2017) ("Rule 805's requirement that 'each part of the combined statement' be admissible [was] not met" with respect to an out-of-court statement by third-party declarant claiming to have had heard Defendant make a threat, because, though Defendant's threat "on its own could be admissible" as "an opposing party's statement," "the third-party declarant's statement" that he had "actually heard [Defendant] make this threat" was "inadmissible hearsay.") (emphasis in original).

2.      **Ruling on Reasonable Reliance**

In <u>Herzig</u>, this Court ruled "that Herzig ha[d] not demonstrated a material issue of fact as to whether he was fraudulently induced to sign the Release," because Herzig had not demonstrated reasonable reliance on any misrepresentations by Goldman.  <u>Herzig</u>, 2023 WL 3560578, at *27.

Herzig now argues that this Court (1) improperly ruled on the reasonable reliance issue <u>sua</u> <u>sponte</u> without giving Herzig notice of the defect in his proof; and (2) erred in ruling that Herzig had not shown reasonable reliance.

a.      **Whether Herzig Had Notice that Reasonable Reliance Is an Element of His Fraudulent Inducement Affirmative Defense**

Herzig contends that

> [w]hether Herzig reasonably relied on Plaintiff's misrepresentations was not a ground on which Plaintiff sought summary judgment. . . . [A]t no time was Herzig's reasonable reliance an issue on which he risked a grant of summary judgment <u>against</u> him, the non-movant.  Thus, Herzig's record responded to Plaintiff's motion as it was filed, which did not seek dismissal for lack of <u>his</u> reasonable reliance. . . . Because . . . the Court concluded that it must address reasonable reliance by Herzig on summary judgment . . . it was . . . required to give the parties notice and a reasonable opportunity to respond.

(Herzig Reconsideration Br. (Dkt. No. 132) at 9-10 (quotation and footnotes omitted; emphases in original))

This argument is likewise nonsense.  <u>Herzig asserted his alleged reasonable reliance in opposing Great Lakes' summary judgment motion.</u>  Herzig argued that Great Lakes

> fraudulently induced Herzig into signing the release, and therefore it is unenforceable. . . . To invalidate a release, a party must show the basic elements of fraud, namely a representation of a material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, <u>justifiable reliance</u>, and resulting injury.
>
> . . . .

> Herzig actually and reasonably relied on these material misrepresentations by
> Plaintiff's lawyer, and he never would have executed the release if he had known
> that any of these representations was false.

(Herzig Opp. to Sum. J. (Dkt. No. 106) at 24, 26 (emphases added))

Having argued that he reasonably relied on Great Lakes' alleged misrepresentations, Herzig cannot now complain that he did not have notice of this issue. And Herzig's argument that Great Lakes did not raise Herzig's reasonable reliance in its opening brief is beside the point. Fraudulent inducement is an affirmative defense that Herzig was required to make out. Great Lakes was not required to preemptively address fraudulent inducement in its opening summary judgment brief. Instead, in its opening brief and Local Rule 56.1 statement, Great Lakes offered arguments and evidence that "established a prima facie case that the Release [was] an enforceable contract." Herzig, 2023 WL 3560578, at *20. As a result, Herzig was required to submit evidence raising a material issue of fact as to his affirmative defenses, including his affirmative defense of fraudulent inducement. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (quotation omitted); Sharon, 169 A.D.3d at 1081 ("[A] signed release shifts the burden . . . going forward . . . to the [party releasing the claim] to show that there has been fraud, duress or some other fact which will be sufficient to void the release.") (quotation omitted). Accordingly, Great Lakes was not required to address reasonable reliance in its opening brief. Instead, it was Herzig's burden to address this element of his affirmative defense and to proffer evidence that created a material issue of fact.

In sum, Herzig was well aware that this Court would consider whether he had proffered evidence sufficient to create a material issue of fact as to whether he had demonstrated reasonable reliance.

**b.     Whether Herzig's Alleged Reliance was Reasonable**

Herzig contends that this Court's ruling as to reasonable reliance is "contrary to controlling law." He argues that reasonable reliance is a question of fact that must be resolved at trial, and that this Court misinterpreted the Policy, the November 2016 Endorsement, the email record of the negotiations between Heffner and Goldman, and the Heffner and Herzig declarations in concluding that any reliance by Herzig on Goldman's purported misrepresentations was unreasonable as contrary to the written documents. (Herzig Reconsideration Br. (Dkt. No. 132) at 16-23; see also Herzig, 2023 WL 3560578, at *21-25.

These arguments are unpersuasive. While "[r]easonable reliance is often a question of fact for the jury rather than a question of law for the court," Rekor Sys., 2022 WL 789157, at *7 (quotation omitted), "[t]here is no reasonable reliance where a party relies on an alleged oral misrepresentation about a document where that statement contradicts the document itself." In such circumstances, courts hold as a matter of law that there was no reasonable reliance, and thus no fraudulent inducement. Herzig, 2023 WL 3560578, at *23 (citing Robinson, 572 F. Supp. 2d at 323 ("New York courts have determined as a matter of law that a party's reliance was unreasonable where the alleged misrepresentation is explicitly contradicted by the written agreement."); Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Tr. Co., 785 F. Supp. 411, 419-21 (S.D.N.Y. 1992) (holding "as a matter of law[] that [plaintiff's] reliance on [defendant bank's] alleged misrepresentations was unreasonable" where (1) plaintiff's "claim [was] based upon the difference between the rate charged by [defendant bank] and the interbank rate . . . allegedly promised by [defendant bank to plaintiff]"; and (2)

"[a]t all relevant times, [plaintiff banking client] had access to both relevant rates . . . [because] [t]he rate charged by [defendant bank] was confirmed in writing to [plaintiff] . . . and the interbank foreign exchange rates were available in daily newspapers"); Marine Midland Bank v. Palm Beach Moorings, Inc., 61 A.D.2d 927 (1st Dept. 1978) (affirming grant of summary judgment to plaintiff bank regarding defendant's obligation to bank because – although defendant argued that a "vice president of the plaintiff bank" had made oral misrepresentations to induce defendant to contract – "it [was] not denied that the defendant . . . had the opportunity to examine the [plaintiff bank's] corporate records before assuming the obligations reflected in the agreement")).

Here, as explained at length in Herzig, all of Goldman's three purported misrepresentations – "(1) that, on November 18, 2016, Plaintiff executed a valid endorsement that reduced coverage on Crescendo to $300,000; (2) that the endorsement was current and applicable to Herzig's pending claim; and (3) that Herzig's broker had already been credited a return of premium," id. at *20 (quotations omitted) – contradict the relevant written documents. See id. at *22 ("That the Policy does not explicitly authorize Great Lakes to unilaterally reduce the asset value and coverage amount is evident from the face of the Policy."); at *23 ("Herzig had a copy of the November 2016 Endorsement, which makes clear that it is not retroactive.  The first page of the Endorsement reflects an execution date of November 18, 2016, and states that it is 'with effect from Friday, November 18, 2016.'"); at *25 ("The Endorsement does not state or imply that the validity of the Endorsement turns on or is affected by the premium credit."). Because Goldman's asserted misrepresentations are contradicted by the Policy and the Endorsement in Herzig's possession, as a matter of law, Herzig could not have reasonably relied

21

on any of the purported misrepresentations, and thus was not fraudulently induced to sign the
Release.

        Herzig's arguments regarding "the applicability of the Endorsement to Herzig's
pending claim," the "issuance of premium refund," and the "exploding offer" (Herzig
Reconsideration Br. (Dkt. No. 132) at 19-23 (capitalization altered)) do not demonstrate that this
Court's analysis of the relevant documents is incorrect.  "A motion for reconsideration is not an
opportunity to quibble with the Court . . . .  [or] to 'treat the court's initial decision as the
opening of a dialogue.'"  Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC,
No. 08 CIV. 10959 (WHP), 2010 WL 286683, at *2 (S.D.N.Y. Jan. 20, 2010) (quoting De Los
Santos v. Fingerson, No. 97 Civ. 3972(MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12,
1998)).  And Herzig's arguments regarding the case law and the evidentiary record are
misplaced.  (See, e.g., Herzig Reconsideration Br. (Dkt. No. 132) at 20 & n.11 (citing
Transamerica Ins. Co. v. Bellefonte Ins. Co., 548 F. Supp. 1329, 1332 (E.D. Pa. 1982), a case
regarding an endorsement on which three different dates were printed, to argue that the
November 2016 Policy's references to November 18, 2016 as both the execution date and
effective date are ambiguous); id. at 21 (citing the fact that Herzig "did not hear back from [his
insurance broker] until December 30[, 2016]" to support the argument that it would have been
futile to try to reach the broker on December 29, 2016))

        In sum, Herzig has not demonstrated that this Court's ruling concerning
reasonable reliance is erroneous.

        **3.    Herzig's Complaints About Alleged Credibility
                Determinations and Inferences**

        Herzig complains that this Court improperly (1) "considered and decided
summary judgment against Herzig, in part on the basis of credibility," and (2) failed to draw

"reasonable inferences" in favor of Herzig, the non-movant.  (Herzig Reconsideration Br. (Dkt. No. 132) at 13-16)  The portions of <u>Herzig</u> that Herzig cites, however, are evidentiary rulings concerning the Heffner declaration and the Herzig declaration.  (<u>See id.</u> at 13 (quoting <u>Herzig</u>'s analysis of the Heffner declaration's admissibility); at 14 ("[T]he Order impermissibly disregarded Herzig's Declaration based on a selective view of the record."))

This Court's rulings regarding the admissibility of the Heffner declaration and the Herzig declaration turn on Federal Rule of Evidence 807.  While Rule 807 directs courts to consider whether the hearsay statement at issue "is supported by sufficient guarantees of trustworthiness" and the "circumstances under which [the hearsay statement] was made," and while this Court applied that standard, <u>see Herzig</u>, 2023 WL 3560578, at *16-18, the Court's rulings are not founded on witness credibility or the drawing of inferences from the evidence, but instead on the requirements for application of Rule 807.  For example, the fact that Heffner was Herzig's longtime lawyer and submitted his declaration as part of Herzig's effort to defeat Great Lake's summary judgment motion, is a factor that must be considered under Rule 807, because it is one of the "circumstances under which [the hearsay statement] was made."  Fed. R. Evid. 807(a)(1).

Herzig also erroneously argues that where he failed to offer evidence in support of an affirmative defense, the Court was required to "infer" that evidence favorable to Herzig might exist.  (<u>See id.</u> at 14 ("The Order erroneously disregards the reasonable inference that, given the undisputed fact that calls between Goldman and Heffner took place on December 28 and 29 in addition to their emails, a reason (and <u>the</u> reason) that Herzig accepted settlement could be that a December 30 deadline <u>was</u> communicated verbally – as Herzig and Heffner testified.  Summary or memorializing emails may, but need not, reflect every single word of a phone call."); at 15

("The Court assumes that Heffner did not ask Goldman for more time to consider the offer and assumes that Goldman did not shut down any further dialog by threatening to withdraw the offer by December 30.") (emphases in original))  While Herzig – as the non-movant – is entitled to have this Court draw inferences in his favor from the admissible evidence, he is not entitled to have this Court rely on speculation.  See UMB Bank, N.A. v. Bluestone Coke, LLC, No. 20-CV-2043 (LJL), 2020 WL 6712307, at *3 (S.D.N.Y. Nov. 16, 2020) ("If the movant meets its burden, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.  A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") (quotations omitted); Fed. R. Civ. P. 56(c)(4)(1)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute.").

In sum, this Court did not improperly consider witness credibility in its rulings, nor did it violate Herzig's rights regarding the drawing of reasonable inferences.

\*       \*       \*       \*

For all these reasons, Herzig's motion for reconsideration will be denied.

## II.    **HERZIG'S FOURTH COUNTERCLAIM**

In Herzig, the Court directs Herzig to show cause why his Fourth Counterclaim should not be dismissed, given the Court's finding that the Release is valid and binding:

> In his Fourth Counterclaim, Herzig alleges breach of contract in connection with Great Lakes not paying the reasonable cost of repairs.  Herzig contends that "the sum of $175,000.00 was grossly inadequate to address the damages sustained to return the Vessel to its pre-incident condition." (Answer to SAC (Dkt. No. 49) at 20-21)  But this Court has ruled that the Release Herzig executed is a valid and binding contract.  Having released Great Lakes from any further claim regarding the October 2016 damage to the Crescendo in exchange for a payment of

$175,000 . . . , Herzig will not be heard to complain that the $175,000 was inadequate to perform the necessary repairs.

. . . Herzig will [therefore] submit a letter . . . showing cause why his Fourth Counterclaim should not be dismissed.

Herzig, 2023 WL 3560578, at *33-34.

In a June 1, 2023 letter, Herzig asserts that he "is entitled to have all relevant evidence heard and considered at trial on all his Counterclaims."  (June 1, 2023 Herzig Ltr. (Dkt. No. 130) at 2)  He goes on to state that the

Fourth Counterclaim seeks relief for Great Lakes' breach of its obligations under the policy to pay for the reasonable costs of repairs as they were performed. While the Court appears to construe that claim as contesting the sum of $175,000 tendered to Mr. Herzig, as part of the release that Mr. Herzig contends was fraudulently induced, the Fourth Counterclaim is not limited to the adequacy of the sum of $175,000.  That is, in the face of a covered claim, Great Lakes was obligated to pay the reasonable costs of repairs as they were performed or to declare a constructive total loss.  Here, the record evidence shows (and will show) that while purportedly determining what the "reasonable" costs of repairs would be, or approving of any amounts, Great Lakes' representative sent to look at the Crescendo immediately decided that the Crescendo was "overinsured" and the "agreed value" of the Policy of $600,000 was too high.

(Id.)

But Herzig does not address the issue that the Court directed him to address:  why the Release does not bar his Fourth Counterclaim.  Herzig does not explain how a breach of contract claim regarding the reasonable cost of repairs for the October 7, 2016 damage to the Crescendo is not subject to the Release, which bars any "action[], cause of action[], suit[], . . . controvers[y], . . . claim[], [or] demand[] . . . in law, admiralty, or equity . . . on account of, or in any way growing out of, any and all known and unknown damage and/or property damage resulting . . . from the incident and the resulting claim for insurance coverage involving the 1997 62 ft Sunseeker vessel named 'Crescendo'. . . which is alleged to have occurred on or about October 7, 2016."  (Pltf. R. 56.1 Stmt., Ex. L (Dkt. No. 109-12) at 2)  And while Herzig asserts

that the "reasonable costs of repairs" are what Great Lakes is "obligated to pay . . . in the face of

a covered claim" (June 1, 2023 Herzig Ltr. (Dkt. No. 130) at 2), this assertion merely

demonstrates that the Fourth Counterclaim "grow[s] out of . . . [the] property damage resulting . .

. from the incident and the resulting claim for insurance coverage."  (Pltf. R. 56.1 Stmt., Ex. L

(Dkt. No. 109-12) at 2)  The Fourth Counterclaim is thus precluded by the Release, and will be

dismissed with prejudice.

## III.   GREAT LAKES' CROSS-MOTION FOR RECONSIDERATION

Great Lakes contends that

> [e]ach and every one of Herzig's Counterclaims ha[s] already been fully
> addressed and dismissed by the Court's Summary Judgment Order.  As such,
> there is no need for this Court to proceed with the bench trial currently set to
> commence on July 10, 2023.  The Court has already thoroughly addressed each
> and every possible argument raised by Herzig with regards to the validity of the
> Release, and roundly rejected them.  Simply put, what is there for Herzig to argue
> should this matter proceed to a bench trial? . . . .  Great Lakes respectfully asserts
> that it is due an entry of Final Judgment in its favor, pursuant to Fed. R. Civ. P.
> 59(e) or Fed. R. Civ. P. 60(b), on the grounds that it was granted summary
> judgment on a dispositive issue, i.e., the Release was deemed valid and
> enforceable.

(Great Lakes Cross-Mot. (Dkt. No. 137) at 10-11, 18)

Rule 59(e) of the Federal Rules of Civil Procedure provides that a party may file

"[a] motion to alter or amend a judgment."  Rule 60(b) of the Federal Rules of Civil Procedure

provides that "[o]n motion and just terms, the court may relieve a party or its legal representative

from a final judgment, order, or proceeding for," inter alia, "mistake, inadvertence, surprise, . . .

excusable neglect . . . [or] any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1) and (6).

Rule 59(e) and Rule 60(b) have no application here, because no final judgment has been entered.

See Fuller v. Interview, Inc., No. 07 CIV. 5728 (RJS), 2013 WL 12447121, at *1 (S.D.N.Y. May

6, 2013) ("An order granting in part and denying in part a motion for summary judgment is non-

final, interlocutory, and non-appealable.") (quotation omitted); United States v. Augspurger, 477

F. Supp. 94, 95 (W.D.N.Y. 1979) ("Defendant Augspurger based her motion on Fed. R. Civ. P. rules 59 and 60.  These rules do not apply in the instant case because no final judgment or order has been issued.").[6]

In any event, Great Lakes inexplicably did not move for summary judgment on Herzig's counterclaims.  Having chosen not to seek summary judgment on Herzig's counterclaims, Great Lakes may not seek summary judgment on those counterclaims now.  The time for filing a summary judgment motion concerning those counterclaims has long since passed.  (See Sept. 17, 2020 Scheduling Order (Dkt. No. 90))  While the logic animating Herzig may ultimately result in a ruling granting Great Lakes judgment on Herzig's counterclaims, those counterclaims must now proceed to trial.

---

[6]  Great Lakes states that it "[seeks] relief not only from the Court's [Summary Judgment] Order dated May 18, 2023 (Dkt. No. 123) but also from the Court's [Scheduling] Order dated June 9, 2023 (Dkt. No. 134), the latter being the first order to actually set this matter for trial and state[] what that trial would entail."  (Great Lakes Reply in Supp. of Cross-Mot. (Dkt. No. 153) at 9)  But a scheduling order is, of course, also interlocutory, non-appealable, and non-final.  Cf. In re Adelphia Commc'ns Corp., 333 B.R. 649, 660 n.65 (S.D.N.Y. 2005) (stating that "scheduling order[s]" are "interlocutory") (citing In re Brentwood Golf Club, L.L.C., 329 B.R. 239, 243–44 (E.D. Mich. 2005)); In re LFD Operating Inc., No. 06 CIV. 1545 MBMTHK, 2006 WL 1148705, at *1 (S.D.N.Y. Apr. 26, 2006) (denying application to appeal bankruptcy court's "interlocutory . . . scheduling order" as "frivolous").

## **CONCLUSION**

For the reasons stated above, Herzig's motion for reconsideration is denied,

Herzig's Fourth Counterclaim is dismissed with prejudice, and Great Lakes' cross-motion for

reconsideration is denied.  The Clerk of Court is directed to terminate the motions (Dkt. Nos.

131, 137).

Dated: New York, New York
       June 29, 2023

                                SO ORDERED.

                                _____
                                Paul G. Gardephe
                                United States District Judge